**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Larry GOOD, Defendant-Appellant.**

**No. 85–1074.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1985.

Decided Jan. 10, 1986.

Geoffrey A. Hansen, Asst. Federal Public Defender, Fernando Aenlle-Rocha-Law Student Intern, San Francisco, Cal., for defendant-appellant.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, HUG, and SCHROE-DER, Circuit Judges.

WALLACE, Circuit Judge:

Good appeals his conviction on two counts for the unlawful possession of a firearm by a felon in violation of 18 U.S.C. App. § 1202(a)(1). He argues that the entry and search of his home and truck without a warrant were illegal and that critical evidence seized should have been suppressed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

On August 17, 1984, while at the home of Susan Wallace, John Snyder, Wallace, Good, and Sharon Bullock, with whom Good lived, became involved in a drunken altercation as a result of Snyder's improper sexual advances towards Bullock. After Good retrieved a revolver from his truck, he and Snyder engaged in a fight during which Good pistol-whipped Snyder, and in which both Snyder and Bullock were stabbed. Good and Bullock then left Wallace's home, and Wallace contacted a neighbor who called the police.

When the police arrived, they found that Snyder had been stabbed and saw two pools of blood on the floor. Both Snyder and Wallace were intoxicated, but made it clear that Good's female companion also had been stabbed, that not all of the blood on the floor was Snyder's, and that Bullock had left with Good. Snyder said that he believed Bullock was in danger. They also gave the police a description of Good and his truck.

Approximately four hours later, shortly before 9:00 a.m., an officer saw a truck matching Snyder's description parked in the driveway of Good's house. The officers entered Good's house without a warrant, arrested Good, and seized a rifle as Good was reaching for it. After the arrest, an officer looked into the truck and saw a revolver partially protruding from under the seat. The officer entered the truck and seized the revolver. The rifle and revolver were the weapons involved in Good's convictions.

II

Good first argues that he was unlawfully arrested and the rifle improperly seized because the officers lacked exigent circumstances when they entered his home without a warrant. We review the district court's finding of exigent circumstances de novo. United States v. McConney, 728 F.2d 1195, 1204–05 (9th Cir.) (en banc), cert. denied, — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (McConney). We review the district court's findings of fact and determinations of credibility, however, under the clearly erroneous standard. United States v. Hicks, 752 F.2d 379, 383 (9th Cir.1985).

Good relies on the asserted absence of credible facts to support a finding of exigency. The record, however, clearly establishes that the officers reasonably thought that a woman in Good's company had been stabbed and had lost blood, but were unaware of the extent of her injuries. The fact that Snyder and Wallace were intoxicated when they talked with the police is probative only of their credibility and the reliability of their statements. In this instance, the district court did not err in concluding that the police could rely upon them.

Good's argument based upon the absence of evidence regarding his propensity for violence, the silence at his home, and the officers' failure to ascertain that the female victim lived with Good ignores the salient fact giving rise to exigency—the undisputed existence of a stabbing victim who left with him from Wallace's home. We have defined exigent circumstances as circumstances involving "a substantial risk of harm to the persons involved," United States v. Robertson, 606 F.2d 853, 859 (9th Cir.1979), in which "a reasonable person [would] believe that entry ... was necessary to prevent physical harm to the officers or other persons." McConney, 728 F.2d at 1199. The district judge did not err in concluding that the facts in this case

gave rise to exigent circumstances. The officers thought that a woman had been stabbed, they had seen the blood on the floor and knew a drunken, violent confrontation had taken place. They were told that the female victim left with Good and that she was in danger. Contrary to Good's assertions, these facts give rise to "more than an officer's anxiety." *McConney*, 728 F.2d at 1206. The officers reasonably could conclude that someone with Good had been seriously injured and that entry was necessary to assist the injured person.

■ Exigent circumstances alone, however, are insufficient as the government must also show that a warrant could not have been obtained in time. *United States v. Manfredi*, 722 F.2d 519, 522 (9th Cir. 1983). The record reveals that a warrant could not have been obtained for several hours because a magistrate was unavailable. The government, however, must also show that a telephonic warrant was unavailable or impractical. *See id.* Good argues that there was ample time to obtain a telephonic warrant, as demonstrated by the several hour delay between the initial investigation and arrest. But Good's concession that the officers did not locate Good's house and truck until just before 9:00 a.m. demonstrates that the officers could not have requested a warrant until that time.

Obtaining a telephonic warrant is not a simple procedure; "[a]mong other things, a 'duplicate original warrant' must be prepared in writing and read to the magistrate verbatim." *Id.* at 523. The only step that is saved is the trip to the magistrate's office. Since a warrant could not have been prepared until Good's house was identified, we conclude that under the circumstances, the government has satisfied its burden of showing that the delay associated with obtaining a telephonic warrant would have unduly increased the risk to the stabbing victim that the officers reasonably believed to be in Good's home and in need of assistance. *Cf. id.* (one and one-half

hour delay did not require a telephonic warrant).

## III

■ Subsequent to the arrest, an officer looked into the truck and saw the revolver in plain view. Good does not contest that the gun was plainly visible or that its incriminating nature was apparent as a result of the officers' knowledge that Snyder had been pistol-whipped. Moreover, we already have concluded that the officers were lawfully on Good's property, and thus lawfully in a position to look into the truck parked in the driveway.

Good relies on *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (*Coolidge*), in which a plurality of the Court invalidated the search and seizure of a vehicle parked in the arrestee's driveway because there were no exigent circumstances. *Id.* at 460–61, 91 S.Ct. at 2034–35. Moreover, the police had no probable cause to believe that anything in the vehicle was stolen, contraband, or dangerous. *Id.* at 460, 91 S.Ct. at 2034. *Coolidge* is distinguishable from this case because here there was a proper plain view observation, and the revolver in Good's truck was both incriminating and dangerous.

We conclude that the limited intrusion to seize the revolver in this case did not require suppression of the revolver. The Supreme Court has held that evidence may be seized from a vehicle without a warrant if the initial view is made by an officer lawfully present, the discovery was "inadvertent," and the evidentiary character of the object was "immediately apparent." *Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) (*Brown*). We conclude that *Brown* applies. The officers properly entered the premises due to exigent circumstances. While lawfully on the premises, an officer looked in the truck window and saw the revolver in plain view. The limited intrusion to seize the weapon did not violate Good's fourth amendment rights.

AFFIRMED.