47 F.3d 1178
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Phillip CATALDO, Defendant-Appellant.
 No. 94-1122.
 United States Court of Appeals, Tenth Circuit.
 Feb. 7, 1995.
 
 1
 Before ANDERSON and KELLY, Circuit Judges, and COOK*, Senior District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 H. DALE COOK, Senior District Judge.
 
 
 4
 William P. Cataldo appealed the trial court's denial of his motion for suppression of evidence seized from his apartment under Federal and State warrants, which he contended were tainted by earlier warrantless entries by police officials. We affirm.
 
 
 5
 On the morning of October 29, 1993 an explosion and fire with injuries occurred at 410 Tucker Street, Craig, Colorado. The City of Craig has a volunteer fire department. The police are routinely called to fire scenes for traffic control and evacuating people from buildings or from areas of danger.
 
 
 6
 The morning of the fire, October 29, 1993, William E. Callister, an investigator with the Police Department of Craig, Colorado was summoned by the police radio dispatcher to a fire scene which was an apartment house in which was the apartment of William Cataldo and Dora Gunderman. Investigator Callister had been told by the dispatcher of an explosion and fire, and injuries at the fire.
 
 
 7
 Callister was trained to conduct arson investigations and was routinely called to major fires and fires with injuries for the purposes of assisting in the evacuation of occupants, assisting in obtaining medical attention for victims and investigating the causes of fires. Callister was also trained to conduct drug investigations and was a member of the Drug Enforcement Administration Task Force for the Western Slope of Colorado.
 
 
 8
 When Callister arrived at the apartment the fire was under control but heavy smoke was coming out of the building. Ambulances were present, a fire truck was in front of the building and there were "several firemen on their knees in front of the door by the smoke with a hose line."
 
 
 9
 After helping other police officers check apartments for remaining occupants Callister met with the fire chief, Tom Cotton. While talking to the fire chief a fireman came to the front of the apartment with a can of acetone and talked to the assistant fire chief, Roy Mason. Someone said that chemicals had been found in the apartment; although Investigator Callister was not sure whether it was officer Walton[1] or a fire fighter who had informed him that the chemicals had been found in apartment 1. The assistant chief stated it appeared an explosion occurred in the bathroom of apartment 1. Callister was asked by Chief Cotton if he had any idea as to the cause of the fire.
 
 
 10
 The fire chief requested that Callister enter the apartment and the fire chief and assistant fire chief along with Callister entered apartment 1 through the living room. The chief or assistant chief had a flashlight to assist in seeing.[2] There was still one hose line in the apartment, and fire fighters were taking things out of the back door of the apartment, opening windows and bringing in ventilation fans to clear smoke and fumes from the building.
 
 
 11
 It was observed that a door was partially blown in half, the sink in the bathroom was full of ice with two stoppered bottles in it. A hot plate was to the right of the sink and several acetone cans were in the bathtub. The toilet and commode had exploded.
 
 
 12
 Nothing was removed from the apartment by Callister. However, for security Callister stationed an officer at the front and back door of the apartment.
 
 
 13
 Callister then proceeded to obtain search warrants and returned with the warrants to search the apartment and an automobile suspected of being used by Cataldo and Gunderman.
 
 
 14
 Pursuant to the warrant a search of the apartment was conducted. Another search was conducted under a Federal warrant on November 15, 1993 and additional items were seized. The Federal warrant was obtained based on information obtained by Callister from his prior entries of the apartment, both before and after obtaining a warrant.
 
 
 15
 Appellant William Cataldo (and Dora Gunderman, who was his co-defendant at trial) moved to suppress all the evidence obtained under the warrants arguing that the warrants were obtained in violation of the Fourth Amendment of the United States Constitution because the evidence was tainted either by the warrantless entry of Officer Walton or by the warrantless subsequent entry by Investigator Callister or both. After their motions to suppress were denied, both Cataldo and Gunderman entered conditional pleas of guilty under FED.R.CRIM.P. 11(a)(2) to two of the counts of the indictment against them without prejudice to their rights to appeal the ruling on the suppression motions.
 
 
 16
 In reviewing a motion to suppress we review evidence in a light favorable to the district court's determination and do not substitute our judgment for the factual findings of the district court unless those findings are clearly erroneous. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law that we review de novo. United States v. Walker, 933 F.2d 812, 815 (10th Cir.1991), cert. denied 112 S.Ct. 1168 (1992).
 
 
 17
 Clearly fire fighters may enter premises to put out a fire without obtaining a warrant. Michigan v. Tyler, 436 U.S. 499, 509 (1978). Further, while on the premises to fight a fire, the fire fighters may seize evidence of arson that is in plain view. In addition, fire officials and investigators may remain on the premises for a reasonable time after the fire has been put out to investigate the cause of the fire. Id. at 509-510.
 
 I.
 
 18
 The trial judge found that Officer Walton was in the apartment performing police duties, such as evacuation of the apartments at the time that he discovered the chemicals.[3] The fact that Walton was not a member of the fire department was immaterial in view of the fact that he was a public safety officer acting to assist fire fighters in protecting people at the scene of a fire. Accordingly, we hold that Walton's entry was Constitutionally permissible.
 
 II.
 
 19
 Appellant also argued that the subsequent entry by Callister was in violation of the Fourth Amendment because the record fails to demonstrate any exigency that would justify entering the premises without a warrant.
 
 
 20
 The entry of Cataldo and Gunderman's apartment by Investigator Callister with the fire Chief and Assistant fire chief was for the purpose of investigating the cause of the fire. Appellant argues that Callister, after viewing the evidence, sought a warrant and only upon returning with the warrant did he remove any items from the apartment.[4] Since no one was harmed by the delay to obtain a warrant, Appellant argued, looking back we can now see that there was, in fact, no exigency.
 
 
 21
 Appellant's argument fails because it makes a mistaken assumption about the nature of the term "exigency" in these circumstances. Whether or not there is an exigency justifying a warrantless entry at the site of a fire[5], especially a fire caused by an explosion, is not determined by hindsight. The issue is not whether after the entry the officers concluded there was an exigency but whether before the entry the warrantless entry appeared reasonable to those officials who decided to make such entry. Under the circumstances of this case the entry was reasonable to determine the origin and cause of the fire.
 
 
 22
 In explaining why contemporaneous or nearly contemporaneous investigations of the cause of a fire are permitted by exigent circumstances the Supreme Court said: "Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction." Michigan v. Tyler, 436 U.S. 499, 510 (1978). Clearly the Court has authorized contemporaneous or nearly contemporaneous investigation of the causes of a fire, whether they are suspected of having an innocent or criminal origin. The facts of this case clearly fall within the exigent circumstances rule.
 
 
 23
 It is true that Investigator Callister concluded that a warrant should be obtained before the removal of items from the apartment. However, this ultimate decision has no bearing on the issue of whether he and the fire chief could enter the apartment to determine the cause of the fire. That decision had to be made before the entry based on the information available to the decisionmakers at that time. Before the entry Callister knew that there had been an explosion of some kind that had caused injuries and a fire.[6] He did not know what caused the explosion; and until he made such a determination and examined the area he had good reason to investigate whether hazards might still exist inside the apartment that could pose an imminent threat to person or property.
 
 
 24
 Although Callister may have had reason to believe there might be a drug lab in the apartment before he entered it is apparent that drug labs can explode and cause fires just as this one did. In addition, he knew that after the explosion and fire flammable chemicals were found inside the apartment where the explosion had occurred. In exigent circumstances police may, without a warrant, enter a residence where they suspect illegal drug activities have occurred because they reasonably fear an explosion or fire might occur. United States v. Echegoyen, 799 F.2d 1271 (9th Cir.1986) and United States v. Callabrass, 607 F.2d 559 (2d Cir.1979), cert. denied, 466 U.S. 940 (1980). Given his background, experience and training in the fields of arson and drugs Callister was in an excellent position to investigate matters related to the cause of the fire and form a reliable opinion as to whether or not the volatile chemicals or their noxious fumes posed an imminent threat to person or property. The fire chief reasonably called upon Callister's considerable expertise and extensive experience in arson investigation (which was not possessed by others at the fire scene[7]) to determine the cause of the explosion regardless of whether it was suspected to have an innocent or criminal origin.
 
 
 25
 The Fourth Amendment prohibits only unreasonable searches and seizures. We hold that both Walton's and Callister's warrantless entries onto the scene of the fire were reasonable under the circumstances. Accordingly we hold that the warrants were not tainted and the judgment of the District Court is, therefore, AFFIRMED.
 
 
 
 *
 The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Officer Walton was a police officer that had preceded Callister to the fire scene and was present when Callister arrived. Walton had also been in the apartment prior to Callister entering and had informed him there were cans of acetone in the apartment. Walton had also informed Callister that Cataldo had said the fire started when his wife lit a lighter and "things had gone up in flames or exploded" as he and his wife were getting ready to paint the bathroom
 
 
 [2]
 The electricity to the apartment complex had been turned off by the fire fighters
 
 
 [3]
 The trial judge found that Officer Walton had entered to perform "police duty" and elaborated on this phrase by describing the typical duties of police officers on the scene of a fire to maintain order and evacuate premises. The judge's finding about the general nature of Walton's presence was supported in the record by Investigator Callister's testimony that he had later helped Walton to evacuate people from adjacent apartments. We note that Walton's purpose of evacuation of people and property from a burning building, although characterized by the trial judge as "police duty", is not inconsistent with the duties of a fire fighter at a fire scene. Police officers and fire fighters have a public duty to protect and save lives and property
 
 
 [4]
 Appellant also pointed out that the fire was under control, the premises were secured and would be kept under surveillance until a search warrant could be obtained, the occupants of the apartment were in the hospital and unable to tamper with the evidence and that the record shows nothing was done in connection with Callister's entry to avert further explosions or other threats on the premises to person or property
 
 
 [5]
 The record indicates that the fire was "under control" it does not indicate the fire was out. Smoke was coming from the building and firemen were still working at the scene. Fire hoses were still in the building and Officer Callister believed he recalled a fire hose still in the apartment when he entered. The decision to enter must be viewed in this context
 
 
 [6]
 Under the circumstances Callister could reasonably have concluded the fire might still be burning somewhere when he entered, but our decision does not hinge on this factual point. Even after the fire is out investigators may remain on the scene to determine the cause of a fire before fire personnel have left the scene and to follow up may in some circumstances even re-enter premises without a warrant within a reasonable time after the fire is extinguished and fire fighters have left the scene--something that was not done in this case. Michigan v. Tyler, 436 U.S. 499, 510-511 (1978)
 Appellant pointed out that Tyler concerned a fire at a business establishment whereas here the fire was at a private residence. In some cases this distinction can be important, but the rules of Tyler that we have cited are not so qualified. Investigation of the origin of a fire is also permissible at a private dwelling. Michigan v. Clifford, 464 U.S. 287 (1984). We point out further that in this case the fire was in an apartment building, not a single family residence. Of such situations Justice Powell in Clifford wrote: "A fire in an apartment ... may present complexities that make it necessary for officials to conduct more expansive searches, to remain on the premises for longer periods of time, and to make repeated entries and reentries into the building. [citing Tyler ]" Id. at 298, n. 9. (The quote is from a plurality opinion, but the dissent wanted to give investigators even broader authority to conduct warrantless entries.)
 Appellant further argued that there was no arson prosecution in this case. Of course, investigators don't know whether there has been arson until after they have investigated. However, this argument misses the point in any event. What the Supreme Court has most clearly held permissible is the investigation of the origin of a fire, not the investigation of arson per se. Id.
 In this case, of course, there was also an explosion; if the need to determine the cause of a fire is a sufficient exigency to justify a warrantless entry the need to determine the cause of an explosion and fire provides a justification for a warrantless entry, a fortiori. In United States v. Martin, 781 F.2d 671, 674 (9th Cir.1985) where an explosion occurred in an apartment and the defendant argued the search should have ceased once it was determined no one was in the apartment, the court said the fact that the searched apartment "was within an apartment complex increased the community interest in investigating the source without delay ... to determine the cause of the explosion and to ensure that additional explosions or fire would not occur. [citing Clifford ]"
 
 
 [7]
 There is no evidence that Officer Walton was a trained drug or arson investigator