MEMORANDUM *
Harry McCabe, Sr. appeals his conviction following a three-day jury trial of *682 assault with a dangerous weapon in Indian country, 18 U.S.C. §§ 113(a)(3), 1153, assault resulting in serious bodily injury in Indian country, 18 U.S.C. §§ 113(a)(6), 1153, and two counts of use of a firearm in a crime of violence, 18 U.S.C. § 924(c)(l)(A)(iii). He challenges the denial of his motion to suppress a rifle found after a warrantless entry into his abode, alleges fault with the indictment, jury instructions, and verdict forms, and argues that the district court abused its discretion in making several evidentiary rulings. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
A. Warrantless Entry
We review de novo whether the police officers had probable cause to arrest McCabe and whether exigent circumstances justified their warrantless entry into McCabe’s hogan, a one-room abode in which he was staying. United States v. Mancinas-Flores, 588 F.3d 677, 687 (9th Cir.2009); United States v. Lopez, 482 F.3d 1067, 1071 (9th Cir.2007).[1]
“Exigent circumstances are defined to include ‘those circumstances that would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.’ ” Fisher v. City of San Jose, 558 F.3d 1069, 1075 (9th Cir.2009) (en banc) (alteration in original) (quoting United States v. Lindsey, 877 F.2d 777, 780 (9th Cir.1989)). And “[i]ncluded within this definition of exigent circumstances is ‘[t]he need to protect or preserve life ’ or avoid serious injury.’ ” United States v. Echegoyen, 799 F.2d 1271, 1278 (9th Cir.1986) (second alteration in original) (quoting Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). “The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion.” United States v. Licata, 761 F.2d 537, 543 (9th Cir.1985).
Here, the police officers were lead to the site by the victim, who had been shot in the head. The district court properly concluded that the police officers had probable cause to arrest McCabe and that exigent circumstance justified their warrantless entry into the hogan. It was evening, and the remote area was dark, save for the lights from the police cars. Approaching the hogan with guns drawn, the police knocked and announced their presence in Navajo and English. They heard noises inside but no response to their calls. The police saw bloodstains on the side of the door, on a chair, and on the ground directly outside the hogan and did not know the condition of the occupant of the hogan. They reasonably believed the victim’s statements that the occupant of the hogan had shot him and was still armed with a weapon that he could turn on the officers or others. See United States v. Alr-Azzawy, 784 F.2d 890, 894 (9th Cir.1985) (affirming warrantless entry where officers reasonably believed defendant had explosives “and was in an agitated and violent state” based on uncorroborated statements by a witness who said defendant had threatened him with a pistol). Given “the remoteness” of the hogan, “the late night hour,” and the distance to a magistrate and the police station, it was “fair to assume that a telephonic warrant would have *683 taken quite some time to secure.” Echegoyen, 799 F.2d at 1280. “Under these circumstances, ... the delay associated with obtaining a telephonic warrant would have unduly increased the risk ... that the officers reasonably believed to be [present].” Id. (second and third alterations in original) (internal quotation marks and citation omitted). Regardless of the condition of the victim who accompanied the officers to the hogan, the totality of the circumstances gave rise to the officers’ objectively reasonable belief that the entry was necessary to prevent physical harm to the officers or other persons, render assistance, or to prevent “some other consequence improperly frustrating legitimate law enforcement efforts.” Fisher, 558 F.3d at 1075 (quotation marks and citation omitted). As the district court found, “[e]nsuring that the gunman was no longer a danger to the public or the police themselves was of paramount importance.” This case is not like United States v. Gooch, 6 F.3d 673, 676 (9th Cir.1993), where the defendant was asleep in a tent and no one had been injured. See Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1172 (9th Cir.2003).
B. Rifle Seizure
“In the context of searches incident to arrest and plain view searches, we review de novo the district court’s application of established facts to legal standards.” United States v. Hudson, 100 F.3d 1409, 1418 (9th Cir.1996). Under United States v. Lemus, 582 F.3d 958 (9th Cir.2009), the unrebutted, consistent testimony by the officers that they spotted the butt of a gun sticking out from underneath a mattress in the hogan is sufficient to establish that the weapon was visible under the plain view doctrine. Id. at 960, 964. McCabe argues that a comforter blocked the view of the rifle, but the evidence to which he points does not support that contention. The seizure of the rifle was also constitutional under the search-incident-to-arrest doctrine. See Hudson, 100 F.3d at 1419.
B. Indictment
Where, as here, a defendant fails to object to an indictment as duplicitous before trial, we review for plain error. See United States v. Arreola, 467 F.3d 1153, 1161 (9th Cir.2006). McCabe argues that Counts 3 and 4 of the superseding indictment were duplicitous because they listed the three discrete penalty provisions set forth in § 924(c)(l)(A)(i)-(iii) in the same count.
“When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt.” United States v. Renteria, 557 F.3d 1003, 1008 (9th Cir.2009) (quoting United States v. Urrutia, 897 F.2d 430, 432 (9th Cir. 1990)). Accordingly, the indictment was not duplicitous when it listed those provisions in a single count. See United States v. Vela, 624 F.3d 1148, 1159 (9th Cir.2010) (affirming a conviction in which additional elements of an offense were listed in a single count).
D. Jury Instructions
Where, as here, the defendant did not object to the district court’s jury instructions, we review a constructive-amendment claim for plain error. United States v. Hartz, 458 F.3d 1011, 1019 (9th Cir.2006). McCabe argues that the jury instructions constructively amended the indictment regarding the § 924(c)(1)(A) counts because the instructions seemed to conflate the two statutory clauses of § 924(c) by including an extra word (“possessing”) before the phrase “during and in *684 relation to a crime of violence,” when the statute instead' bars possessing a firearm “in furtherance of’ a crime of violence. See 18 U.S.C. § 924(c)(1)(A).
There was no plain error regarding the jury instructions since any error — such as it occurred — was harmless. United States v. Thongsy, 577 F.3d 1036, 1042-44 (9th Cir.2009) (holding on de novo review that error was harmless where jury instruction “conflated the two clauses of § 924(c) by instructing the jury that it could convict [the defendant] if it found that he ‘possessed’ a firearm (part of the second clause) ‘during and in relation to the crime’ (part of the first clause)”); see also United States v. Nobari, 574 F.3d 1065, 1080 (9th Cir.2009) (holding conflating two statutory clauses of § 924(c) in jury instructions “did not ‘seriously affect[ ] the fairness, integrity or public reputation of the trial.” (alteration in original) (citation omitted)).
E. Verdict Form
Where, as here, a defendant did not object to the verdict form at trial, we review for plain error. United States v. Pineda-Doval, 614 F.3d 1019, 1031 (9th Cir.2010) McCabe argues on appeal that the verdict form for Counts 3 and 4 confused the jury since it listed the several ways in which § 924(c)(1)(A) can be violated (i.e., using, carrying, possessing, blandishing, and discharging a firearm) and instructed the jury to “check all that apply.” McCabe faults the instruction for not “explaining] to the jurors that not only were they supposed to unanimously agree on guilt or innocence of the § 924(c) charge generally, but also on the specific manner of committing that crime that may have triggered an increase in the punishment for that charge.”
The plain error standard is not met here. Even assuming that the instructions were erroneous, there is no realistic probability that the error affected the verdict. This case did not turn on a distinction among modes of using a firearm — the jury either believed that McCabe shot Woodie or that he did not. See Arreola, 467 F.3d at 1162 (“[Considering the jury verdict form in light of the court’s instructions and the trial as a whole, it is not likely that error in the jury verdict form affected the jury’s decision to convict.”).
F. Nurse Benlco’s Testimony
We review for abuse of discretion the district court’s decision to grant a deposition under Fed.R.Crim.P. 15(a) and to deny a motion to continue. United States v. Matus-Zayas, 655 F.3d 1092, 1098 (9th Cir.2011); United States v. de Cruz, 82 F.3d 856, 860 (9th Cir.1996). McCabe argues that the district court abused its discretion when it denied his motion for a continuance so Nurse Alison Benko could testify in person and ordered a videotaped deposition instead.
With regard to the videotaped deposition, the court’s order was not requested by one of the parties and its decision was not couched in the precise language of Fed.R.Crim.P. 15(a), which allows for depositions because of “exceptional circumstances and in the interest of justice.” Fed.R.Crim.P. 15(a)(1). But, in light of the district court’s articulated concern for judicial resources, the well-established practice of allowing videotaped depositions when live testimony would pose a hardship to the witness, and the deferential standard of review, the district court did not abuse its discretion when it allowed Nurse Benko to testify by video deposition. See Furlow v. United States, 644 F.2d 764, 766-67 (9th Cir.1981) (per curiam).
With regard to the continuance, under the factors articulated in United States v. Pope, 841 F.2d 954, 956 (9th Cir.1988)— which look to the requester’s diligence, the *685 likely utility of the continuance, the inconvenience to the court and the other side, and prejudice — the district court explained that it would be inconvenienced by a delay, and McCabe failed to demonstrate that he was prejudiced by the denial of a continuance. See id. at 958. Accordingly, we cannot say that the ordering of the video deposition or the denial of the continuance was “arbitrary or unreasonable” so as to merit a reversal under an abuse of discretion standard of review, de Cruz, 82 F.3d at 860 (quoting United States v. Torres-Rodriguez, 930 F.2d 1375, 1383 (9th Cir. 1991)).
G. Excited Utterance
We review the admission of evidence under an exception to the hearsay rule for an abuse of discretion. United States v. Johnson, 297 F.3d 845, 862-63 (9th Cir. 2002). If “we conclude that a district court has wrongly admitted hearsay, we review for harmless error.” United States v. Olano, 62 F.3d 1180, 1189 (9th Cir.1995).
McCabe challenges the admission of a hearsay statement-of a neighbor who testified that the victim told her that McCabe shot him-under the excited utterance exception. Since the statement was made only about thirty minutes after the shooting, the victim’s trauma was substantial, the victim displayed signs of agitation and distress, and the admission was harmless in light of all of the evidence, we conclude that the district court did not abuse its discretion by admitting the statement and, alternatively, that admission of the statement was harmless error. See Leavitt v. Arave, 383 F.3d 809, 830 (9th Cir.2004); United States v. Rivera, 43 F.3d 1291, 1296 (9th Cir.1995).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided *682 by 9 th Cir. R. 36-3.

. Although the Fourth Amendment does not apply directly to tribal officers, the Indian Civil Rights Act imposes the same' limitations. United. States v. Becerra-Garcia, 397 F.3d 1167, 1171 & n. 1 (9th Cir.2005) (citing 25 U.S.C. § 1302(2)).