**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No.   16-10545 |
| Plaintiff-Appellee, | D.C. No.<br>3:15-cr-00122-EMC-2 |
| v. | |
| KEVIN BAIRES-REYES, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted July 13, 2018
San Francisco, California

Before:  HAWKINS, BEA, and HURWITZ, Circuit Judges.

Kevin Baires-Reyes was convicted and sentenced in federal court for robbery

and firearms crimes after he was arrested as one of two suspects who robbed a Quick

Pick Market in Daly City.  He appeals his judgment and sentence.  Because we

determine that the district court plainly erred by admitting certain evidence obtained

---

[*] This disposition is not appropriate for publication and is not precedent except
as provided by Ninth Circuit Rule 36-3.

in violation of Baires-Reyes's Fourth Amendment rights, we reverse his conviction and remand.

As Baires-Reyes argued below, the officers here exceeded the scope of the customary license to "encroach upon the curtilage of a home for the purpose of asking questions of the occupants," *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012) (internal citation and quotation marks omitted), by knocking on the door at 4:00 a.m. without a warrant, and thus the "knock and talk" exception to the warrant requirement did not apply, *United States v. Lundin*, 817 F.3d 1151, 1158-60 (9th Cir. 2016) ("[U]nexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours."). As such, even if the owner of the home consented to the officers' entry, this consent was wrongfully obtained, as was any evidence viewed by the officers while in the home without a warrant.

The district court, however, denied Baires-Reyes's motion to exclude all evidence obtained from the home, concluding that the evidence was lawfully obtained through an independent source when the officers left, obtained a warrant, and returned to the home around noon. On appeal, Baires-Reyes concedes that many of the items so obtained, such as the handgun, bottle of Hennessy, and Cincinnati Reds cap, were properly admitted pursuant to this doctrine. However, because he was no longer present on the property when the officers returned with the warrant (having been

2

arrested and taken to the police station by that point), he contends that four critical pieces of evidence linking him to the crime were no longer available or observable by officers executing the warrant and thus could not be justified by the independent source doctrine:

(1) the observation of the three suspects asleep in the room together;
(2) the observation of the clothes Baires-Reyes was wearing when arrested;
(3) the seizure of those clothes; and
(4) the DNA swab taken upon his arrest.

Baires-Reyes did not make this argument in response to the government's independent source argument below,[1] and he conceded at oral argument that it should be reviewed for plain error.[2] But, we find that the Fourth Amendment violation is clear under *Lundin*. Further, the independent source doctrine permits only the introduction of evidence *actually* acquired through a separate and lawful means, *see*

---

[1] Because Baires-Reyes's motion to suppress presented the district court with the overarching issue of whether *all* the seized evidence was admissible through independent source, Baires-Reyes preserved this issue for appeal; his failure to rebut the government's independent source argument below, with respect to this narrower subset of evidence, does not forfeit objection on appeal.

[2] Under plain error review, the defendant must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the district-court proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017) (internal quotation and citation omitted and alteration in original).

*Murray v. United States*, 487 U.S. 533, 537–38 (1988).  It is also apparent  that the specific items or observations now objected to by Baires-Reyes were obtained through the officers' unlawful presence in the home without a warrant, and not from the later-executed warrant.

The government argues that this evidence could still be admitted under the inevitable discovery doctrine.  However, as we held in *Lundin*, "[t]he inevitable discovery exception does not apply when officers have probable cause to apply for a warrant but simply fail to do so."  817 F.3d at 1161.  The district court here found that even without the additional evidence obtained through entry into the home, the officers had probable cause for a warrant for suspect Flores-Ayar.  However, they intentionally chose not to obtain one:  "We would have to wake up the on-call judge after writing the warrant, driving to wherever they're located—which could be somewhere in the southern part of San Mateo County to get the order signed—and then returning."  "[T]o excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the fourth amendment." *United States*

*v. Young*, 573 F.3d 711, 723 (9th Cir. 2009) (quoting *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986)).[3]

Admission of the officers' observations of Baires-Reyes asleep in the room with the other robbery suspect and near the spoils of the robbery, wearing clothes identical to those worn by the second robber in the surveillance tape, was undoubtedly prejudicial and affected his substantial rights. Indeed, the police had no means of even identifying Baires-Reyes as the second suspect until they entered the home and found him sleeping there; thus they would have had no reason to arrest him or obtain the DNA swab from him without this improperly-obtained evidence. The observations made by the police at the time of the warrantless entry were repeatedly referred to and emphasized throughout the trial and affected the fundamental fairness of the proceeding.

---

[3] In any event, it is not "inevitable" that the officers would have found the same evidence and made the same incriminating observations of Baires-Reyes that they did during the unlawful entry at 4:00 a.m. It is certainly not *inevitable* that Baires-Reyes would have been wearing the same clothes as the suspect in the robbery and sleeping near the spoils of the robbery if the officers obtained a warrant and returned later in the day. By daylight or before leaving the apartment, Baires-Reyes could have awoken, changed clothes, or even disposed of clothing or other evidence from the robbery. *See Young*, 573 F.3d at 722-23 (noting that "nothing more than speculation . . . support[ed] the discovery of the challenged evidence outside the improper search"); *see also United States v. Boatwright*, 822 F.2d 862, 865 (9th Cir. 1987) ("[Defendant] would not have waited patiently beside his weapons for an agent to arrive with a warrant.").

For these reasons, we reverse Baires-Reyes's conviction and remand.

**REVERSED AND REMANDED.**