UNITED STATES of America,
Plaintiff–Appellant,

v.

Avery Jay WARNER,
Defendant–Appellee.

No. 87–1084.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1987.

Decided April 5, 1988.

As Amended June 16, 1988.

David F. Levi, U.S. Atty., Sacramento, Cal., for plaintiff-appellant.

Robert M. Holley, Asst. Federal Defender, Sacramento, Cal., for defendant-appellee.

Before SCHROEDER, PREGERSON and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

The Government appeals from an order granting the defendant's motion to suppress evidence in this prosecution for possessing a controlled substance used to manufacture methamphetamine. The evidence suppressed was obtained through a warrantless search of a garage leased to the defendant. The Government's principal justifications for the search were (1) that the landlord had provided requisite consent, or (2) that there were exigent circumstances. Based upon its careful findings of fact, the district court concluded that the landlord could not have provided requisite consent because he lacked joint access to the garage, and the information available to the officer at the time did not present exigent circumstances. We have jurisdiction pursuant to 18 U.S.C. § 3731, and we affirm.

The underlying facts as found by the district court are not materially disputed. The defendant rented the residence and garage in Sacramento in June, 1986. At that time, it was agreed that the landlord had permission to enter the premises in the defendant's absence to make certain repairs and mow the lawn.

On June 17, the landlord went to the residence to make repairs and entered the garage seeking a power source for his electric drill. In the garage he observed numerous boxes of chemicals. He compiled a list and took them to a chemist friend who told him the chemicals posed no hazard. The list included P2P, ether, formaldehyde, acetic anhydride and methlamine. At the beginning of July, the defendant told the landlord that he planned to move out by the end of the month because he had lost his job, and that in the meantime he was seeking work in Washington State.

The landlord went to the property to mow the lawn on July 12. He noticed a pungent chemical smell and became concerned about a possible hazard because it was a hot day. He returned home to call the police. He asked that someone from the appropriate agency come to check out the condition of the garage and its contents, but told the police that the situation was not an emergency.

A police officer arrived at the landlord's house approximately two hours later, and the two together went to the property rented by the defendant. When there was no answer to their knock on the front door, they started down the driveway and the landlord showed the officer the list of chemicals he had made a few weeks earlier. The officer testified that he recalled that formaldehyde and ether were among the chemicals listed, and that he was aware that such chemicals are used in manufacturing illicit drugs. He also testified that he knew that these chemicals can pose a risk of explosion. However, the officer testified that he could not smell the odors described by the landlord, possibly because he suffered from hay fever.

The officer asked the landlord to use his key to open the garage. When they entered, they observed boxes of chemicals partially covered by tarps. The officer then called the fire department and an investigator from the narcotics section of the police department.

The police seized the suppressed items from both the garage and the house. No warrant was ever obtained. It is not disputed that all of the items suppressed were the product of the original warrantless entry by the officer with the landlord's key. The issue before us is thus whether that entry comes within any of the exceptions to the warrant requirement of the fourth amendment.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). This court will "uphold the district court's findings of fact at a suppression hearing unless they are clearly erroneous (citation omitted). The ultimate issue of whether exigent cir-

cumstances justify a warrantless entry and/or search is resolved under the *de novo* standard." *United States v. Echegoyen*, 799 F.2d 1271, 1277–78 (9th Cir. 1986).

■ The officer stated that he did not obtain a warrant because he believed that no warrant was necessary if the landlord consented to the entry. Landlords, however, do not have authority to waive the fourth amendment's warrant requirement by consenting to a search of premises inhabited by a tenant who is not at home at the time of a police call. The security of tenants' residences is not dependent solely upon the discretion of landlords. *See Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) ("to uphold such an entry, search and seizure 'without a warrant would reduce the [Fourth] Amendment to a nullity ...'") (citation omitted).

We have permitted the police to rely on a landlord's consent for admission to an abandoned apartment when the abandonment was apparent. *United States v. Sledge*, 650 F.2d 1075 (9th Cir.1981). Here, however, the defendant had not abandoned the premises. The rent was paid and he had told the landlord he would move out at the end of the month. Nothing at the scene indicated to the officer that the premises were abandoned.

We have looked to three factors in determining when a third party may effectively consent to a search of another's property. The factors are: (1) whether the third party has an equal right of access to the premises searched; (2) whether the suspect is present at the time the third party consent is obtained; and (3) if so, whether the suspect actively opposes the search. *United States v. Impink*, 728 F.2d 1228, 1232–33 (9th Cir.1984). We drew our factors from *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Here the latter two factors are not implicated because of the suspect's absence. Thus, the issue of consent turns upon whether the landlord had an equal right of access to the premises.

The landlord in this case did not have any right of access for most purposes. As noted by the district court, "at best, the landlord had permission to enter the property for the limited purpose of making specified repairs and occasionally mowing the lawn." Here, as in *Impink*, the land-

lord "had reserved only [a] limited right to enter the garage.... The agreement that permitted the [landlord] to re-enter the garage was oral. Even if ... a right to re-enter existed, we need not interpret an informal oral agreement as conveying an unlimited right of access." *Impink*, 728 F.2d at 1233. The landlord therefore could not give effective consent for the search of Warner's property.

We therefore must determine whether the warrantless entry was justified upon some basis other than the one on which the police officer relied. The Government urges us to hold that exigent circumstances provided adequate justification for the entry.

■ We have defined exigent circumstances as "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Exigent circumstances include the need to protect or preserve life or avoid serious injury. *See Echegoyen*, 799 F.2d at 1278; *see also United States v. Martin*, 781 F.2d 671, 674–75 (9th Cir. 1985). "Exigent circumstances necessarily imply that there is insufficient time to get a warrant." *Echegoyen*, 799 F.2d at 1279 n. 5; *see also United States v. Good*, 780 F.2d 773, 775 (9th Cir.), *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986).

■ Exigencies must be viewed from the totality of the circumstances known to the officer at the time of the warrantless intrusion. *United States v. Licata*, 761 F.2d 537, 543 (9th Cir.1985). The reason behind assessing exigency from the circumstances known to the officer at the time of the search lies in the purposes underlying the fourth amendment. As the United States Supreme Court articulated in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979):

a search of private property must be both reasonable and pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of the surrounding circumstanc-

es, is not a substitute for the judicial warrant required under the Fourth Amendment.... [B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and "the burden is on those seeking the exemption to show the need for it." 442 U.S. at 758–60, 99 S.Ct. at 2590–91. The Supreme Court then went on to state that exigency "must be assessed at the point immediately before the search." 442 U.S. at 763, 99 S.Ct. at 2593. The fourth amendment does not permit an officer to conduct a search and seek its justification later. As we have previously stated, "[t]he propriety of a search ... is unrelated to the results it later yields. To hold otherwise would legitimize any search as long as it ultimately revealed evidence of illegality." Impink, 728 F.2d at 1231–32; see also Blefare v. United States, 362 F.2d 870, 881 (9th Cir.1966) (dissenting opinion).

■ Here there was no basis for believing that any illicit activity was actually taking place on the premises; no occupants were present. There was similarly no basis for believing that suspects or evidence might disappear. As the district court observed, in this case the only potential exigency was the inherent volatility of the chemicals known to be in the garage.

Two cases in this circuit help delineate the kinds of circumstances that constitute exigency with respect to threatened fire or explosion. In Echegoyen, officers arrived at 12:30 a.m. in response to a call about a chemical odor. They recognized the smell as ether, determined where the odor was coming from, and called the fire department. Upon being advised by the firefighter that immediate action was necessary, the officers entered the residence, arrested the occupants, and attempted to eliminate the fire hazard by turning off the gas burners and opening the windows. We upheld the warrantless entry, stressing the "deputies' testimony as to chemical smell, the activity in the cabin, the early-morning hour, the remoteness of the ... area, and the limited availability of firefighting resources." 799 F.2d at 1278–79. None of these factors exists in this case. By contrast, in Impink, we declined to hold that a warrantless entry was justified when the police entry was based upon the observa-

tion through a garage window of evidence of drug manufacturing.

In urging that the circumstances in this case constitute an exigency justifying immediate entry, the Government relies heavily upon expert evidence at the suppression hearing that because of the summer heat, these chemicals in fact possessed a higher potential for explosion than either the landlord or the police officer had perceived. This, however, is not something that falls within the ambit of circumstances known to the officer at the time and as we have seen, it is those circumstances that are controlling. See, e.g., Arkansas v. Sanders, 442 U.S. at 763, 99 S.Ct. at 2593.

The totality of the circumstances known to the officer at the time of the intrusion consisted of the landlord's perception of the chemical fumes and the landlord's lack of perception that an immediate emergency existed; the list of chemicals the landlord had made and the officer's limited knowledge of their possible explosive potential; knowledge that Warner was not home; and knowledge that the chemicals had been in the garage in the summer heat for at least two weeks. Although the officer may have been well-intentioned, the circumstances did not present an exigency justifying a warrantless entry.

■ We must also reject the Government's argument that, although the entry violated the fourth amendment, we should extend to warrantless searches the "good faith exception" to the exclusionary rule established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We previously rejected that position in United States v. Whiting, 781 F.2d 692, 698 (9th Cir.1986), pointing out that the Leon exception "is clearly limited to warrants invalidated for lack of probable cause and does not create the broad 'good faith' exception the government suggests."

The good faith exception to the warrant requirement of the fourth amendment developed in Leon arose in the context of reasonable reliance by a police officer on a warrant determined by a magistrate, albeit incorrectly, to rest on probable cause. Leon, 468 U.S. at 904, 104 S.Ct. at 3410. In its recent decision in Illinois v. Krull, — U.S. ——, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Court extended the good faith exception announced in Leon to situations in which police officers conduct a warrantless search pursuant to a regula-

tory scheme authorizing the search, even though that statute later is invalidated on constitutional grounds. *Id.* at ⸺, 107 S.Ct. at 1167. In both *Leon* and *Krull,* the touchstone of the Court's decision was the police officer's objectively reasonable reliance on the determination of a magistrate or a legislature that the challenged search in fact met the standards required by the fourth amendment.

In the present case, in contrast, the Government would have us conclude that the good faith exception rests on the police officer's belief that he or she is acting reasonably. We reject this suggestion. Doubtless, a police officer who conducts a search may subjectively believe he or she is acting reasonably. Mere reliance on the officer's own judgment, however, does not rise to the level of reasonable reliance required by the Constitution.

Finally, the Government urges us to apply a "balancing test" to these circumstances, balancing the defendant's fourth amendment rights against the public interest. However, the home and its traditional curtilage is given the highest protection against warrantless searches and seizures. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed...." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). The Supreme Court has noted that searches "carried out on a suspect's premises without a warrant [are] *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971). Thus, the "balancing test" urged here by the Government is already encompassed by the exception to the warrant requirement for exigent circumstances.

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that exigent circumstances did not justify the officer's warrantless entry into Warner's leased premises. We review the ultimate issue of whether exigent circumstances justified the officer's warrantless entry under the de novo standard, *United States v. Echegoyen,* 799 F.2d 1271, 1277–78 (9th Cir.1986). The totality of circumstances in this case demonstrate a "need to protect or preserve life or avoid serious injury." *Id.* at 1278, *citing Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). On that basis, I would reverse the district court's order granting the defendant's motion to suppress.

Determining the existence of exigent circumstances requires use of an objective test. "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him ... would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate"? *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978) (citations omitted).

At the moment when the officer entered Warner's leased premises, he knew all of the following information: that Warner's landlord had smelled chemical fumes on two occasions, most recently on that very day; that Warner's landlord had observed boxes of formaldehyde and ether in Warner's premises; that these boxes of chemicals had been in the summer heat for at least two weeks; that these chemicals were associated with illicit drug manufacturing; that these chemicals posed a risk of explosion; and that it was a very hot day. The majority correctly points out that the officer could not, himself, smell the odors described by the landlord. However, even without the benefit of his olfactory sense, all of the above information warrants a man of reasonable caution in the belief that an immediate entry is not only appropriate, but necessary to protect life and avoid serious injury.

The facts of this case parallel those in *Echegoyen,* infra. In *Echegoyen,* this Court upheld a warrantless entry because the officers suspected the residence was the scene of illicit narcotics activity, the officers smelled ether and thought it might pose a fire hazard, the residence was in a remote location, the area had limited fire-fighting resources, and they were notified early in the morning. Although the entry in our case occurred in the mid-afternoon, rather than early in the morning, and took place in a densely populated area, rather

than in a remote area, a man of reasonable caution could have readily concluded that the threat to a greater number of people posed an even greater exigency than that in *Echegoyen.*

Additionally, the conclusion that a bona fide emergency existed was "buttressed by the behavior of the officer[ ] upon entering the dwelling." *Echegoyen,* 799 F.2d at 1279. As in *Echegoyen,* upon entering the dwelling, the officer proceeded to reduce the hazards of fire and explosion by phoning the fire department, while the landlord ventilated the area.

Considering the totality of the circumstances known to the officer at time of his entry into Warner's leased premises, sufficient exigent circumstances existed to uphold the belief of a man of reasonable caution that immediate entry into the premises was necessary to protect life and avoid serious injury. Therefore, I respectfully dissent form the majority's decision to affirm the district court's order granting the defendant's motion to suppress.