ERDMANN, Judge,
with whom BAKER, Chief Judge,
joins (dissenting in part and concurring in the result):
While I agree with many of the majority’s preliminary holdings, I disagree with the ultimate holding that Irizarry’s Fourth Amendment rights were not violated because the entry into his apartment was reasonable. I therefore respectfully dissent from that portion of the majority’s opinion. I would also overrule United States v. Jacobs, 31 M.J. 138 (C.M.A.1990), to the extent that it allows a landlord to consent to the entry of a government agent into a military member’s apartment for any purpose which the landlord may also have a limited right of entry. However, since I believe that the circumstances of this case do not warrant the application of the exclusionary rule, I concur in the result.

Background

Irizarry’s landlord, Cedar Creek Apartments, contacted Irizarry in early February 2010 concerning his January rent. Irizarry insisted that he had paid his January rent and provided his money order stubs. Later Cedar Creek determined that Irizarry had attempted to pay his January rent, but that one of its employees had mistakenly failed to deposit the money order. Cedar Creek spoke with Irizarry again and he informed its representatives that he would trace his January money order and also pay his February rent on February 15. Irizarry did not pay the February rent on February 15 nor did he provide any further information as to the January payment. Cedar Creek’s further efforts to contact Irizarry were unsuccessful but at some point Cedar Creek determined from the Air Force that he was on leave.
Cedar Creek eventually elected to perform a “skip-check.” As noted by the majority, during the “skip-check,” a Cedar Creek maintenance worker discovered that the apartment was in “disarray.” However, the maintenance worker also found toiletries in the apartment as well as items of value, including furniture, computer speakers, DVDs, and clothes. Based on the “skip-cheek,” the landlord concluded that the apartment had not been abandoned, and the manager decided to contact the Air Force for assistance in getting Irizarry to clean up the unit and pay the overdue rent.
In response to the landlord’s invitation to view the apartment, Irizarry’s first sergeant *108 and Ms immediate supervisor visited the apartment complex on February 23, and the manager consented to their entry into the apartment leased by Irizarry. While in the apartment the sergeants discovered the altimeter vertical velocity indicator (AWI).
At trial Irizarry moved to suppress this evidence as the fruit of an unlawful search and seizure. The military judge initially found that the sergeants entered “in their official capacity” and that the inspection was “ ‘government action’ sufficient to trigger the [Fourth] Amendment’s protection against unreasonable searches.” However, the military judge also found that “[b]y clear and convincing evidence, [Cedar Creek] had the authority to consent to [the sergeants] walking through the accused’s apartment [and that its] purpose was to effectuate repairs upon the property, a purpose specifically listed in the lease at Paragraph 28.” The military judge denied the motion to suppress the introduction of the AWI, primarily relying on Jacobs.

Discussion

The Fourth Amendment protects individuals from unreasonable intrusion only by government actors. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (citing Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)). However, the protections of the Fourth Amendment are not limited to intrusions of a law enforcement nature. See O’Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). I agree with the majority’s conclusion that the sergeants were “government agents” acting in their “official capacity” when they entered the apartment. United States v. Irizarry, 72 M.J. 100, 105-06 (C.A.A.F.2013). Once this determination has been made, the relevant Fourth Amendment inquiry is whether Iri-zarry had a reasonable expectation of privacy and if he did, whether the Government intruded on that expectation in a way that was unreasonable. See United States v. Michael, 66 M.J. 78, 80 (C.A.A.F.2008) (citing United States v. Daniels, 60 M.J. 69, 71 (C.A.A.F.2004)).
1. Reasonable Expectation of Privacy
The majority concluded that Irizarry had a reasonable expectation of privacy in his apartment and that a “search” in the Fourth Amendment sense occurred. I agree. Despite tMs holding, the majority goes on to hold that Irizarry had a significantly diminished expectation of privacy because he failed to pay the rent, damaged the apartment, and failed to respond to his landlord’s inquires. Relying on United States v. Wilson, 472 F.2d 901, 902 (9th Cir.1972), the majority believes that “an accused’s conduct can diminish or extinguish a reasonable expectation of privacy such that consent by a landlord to a warrantless search can be reasonable under some circumstances.” Irizarry, 72 M.J. at 106 n. 10.
Wilson, however, simply stands for the principle that there is no expectation of privacy in abandoned property — a principle that this court acknowledged in Michael, 66 M.J. at 80 n. 4. The phrase “diminished expectation of privacy” appears nowhere in Wilson. While under the facts presented in Wilson, the court held that Wilson had abandoned the apartment, the facts in this case do not support a similar result.[1] In fact, the Cedar Creek representatives testified that following the “skip-check,” they determined that Iri-zarry had not abandoned the apartment. In addition, the sergeants testified that they believed the apartment was still Irizarry’s residence and had not been abandoned, and Cedar Creek believed “that the apartment was not abandoned according to Texas state law or the terms of the lease.”
*109 In addition to this testimony and the military judge’s findings, Irizarry had left toiletries in the apartment along with clothes, furniture, and electronic equipment. Unlike Wilson, no one informed the landlord that Irizarry had moved out. While Cedar Creek had been unable to contact Irizarry, both the Air Force and the landlord were aware he was away on leave. Under these circumstances Irizarry retained a reasonable expectation of privacy in his off-base apartment and his expectations of privacy were not diminished.[2]
2. Reasonableness of the Search
Under most circumstances, warrantless intrusion by the government is per se unreasonable. United States v. Weston, 67 M.J. 390, 392 (C.A.A.F.2009) (citing Georgia v. Randolph, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)). “With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.” Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). The majority opinion concludes that the sergeants’ entry was nevertheless reasonable because the lease allowed the landlord to enter the apartment under certain circumstances and Jacobs authorized the landlord to consent to the entry of third parties when those circumstances existed.
A. Supreme Court Authority
As this is an inquiry into the scope of the Fourth Amendment, the analysis of this issue must start with a review of relevant Supreme Court precedent. In Georgia v. Randolph, the Court reviewed a number of cases dealing with landlords or hotel managers allowing third parties into rented premises:
A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the eon-sent of the current occupant. See Chapman v. United States, 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord); Stoner v. California, 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (hotel manager). A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, Chapman, supra, at 617 [81 S.Ct. 776], and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room, see Stoner, supra, at 489 [84 S.Ct. 889], see also United States v. Jeffers, 342 U.S. 48, 51 [72 S.Ct. 93, 96 L.Ed. 59] (1951) (hotel staff had access to room for purposes of cleaning and maintenance, but no authority to admit police). In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises.
547 U.S. at 112, 126 S.Ct. 1515 (emphasis added).
While the majority recognizes this line of cases, it nonetheless concludes that “there is no Supreme Court precedent indicating that a landlord may never consent to entry for non-law enforcement purposes where state law and the lease allow.” Irizarry, 72 M.J. at 105. While relying on the absence of Supreme Court precedent is questionable authority at best, we do in fact have a number of Supreme Court cases on this very point. In order to uphold a warrantless search by consent under those cases, the consent must be given either by the defendant or by one with common authority over the property to be searched. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The cases specifically reject the premise that state property law or lease agreements can substitute for that consent. *110 Randolph, 547 U.S. at 112, 126 S.Ct. 1515; Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988; Chapman, 365 U.S. at 617, 81 S.Ct. 776.[3]
While here the majority holds that the landlord did not have common authority to grant consent to the sergeants’ entry into the apartment, it nevertheless concludes that this authority is inapplicable and goes on to rely on the lease provisions and Jacobs to find the search reasonable in a Fourth Amendment context. Irizarry, 72 M.J. at 103-06.
B. Lease Provisions
Even if it were necessary to turn to the lease, the lease provisions do not provide authority for either the landlord or the sergeants to enter the apartment under these circumstances, paragraph 28 of the Lease Agreement provides, in pertinent part:
WHEN WE MAY ENTER. If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:
(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and
(2) entry is for: ... making repairs or replacements; estimating repair or refurbishing costs; ... doing preventative maintenance; ... exercising our contractual lien; ....
(Emphasis in second paragraph added.)
The findings and conclusions of the military judge that the landlord had the authority to consent to the sergeants’ entry into Irizarry’s apartment and that their purpose was to “effectuate repairs upon the property, a purpose specifically listed in the lease at paragraph 28,” constitute an abuse of discretion. Assuming that “effectuate repairs” equates to “making repairs,” neither the landlord nor the sergeants entered for that purpose. The landlord was there to try to get the Air Force to help in getting Irizarry to clean up the apartment and pay his back rent. The sergeants were there to gather information about the condition of the apartment, report back to the commander, and determine whether Irizarry needed to be counseled. As noted, Irizarry’s first sergeant specifically testified on cross-examination that he did not intend to “actually perform repairs,” to “draft up an estimate of the cost,” or to do “any preventative maintenance.”[4] Furthermore, the first sergeant had already explained to the landlord — prior to entering the apartment — that there was nothing that the Air Force could do for Cedar Creek and that it would have to pursue the issue through civilian channels.
The majority holds that the lease authorized the landlord to invite the sergeants into the apartment “to assist them in securing rent and repairs from Appellant — something that necessarily includes viewing the damage to estimate repair costs ... and determine how to counsel Appellant.” Irizarry, 72 M.J. *111 at 104-05. In reaching this holding the majority relies on paragraph 28 of the lease, but that provision does not authorize the entry of the landlord or the sergeants in order to secure rent. Nor does it authorize the landlord or the sergeants to enter to secure repairs from Irizarry rather than to make repairs themselves. Indeed, there is no provision in the lease which authorizes entry for the purpose the majority has identified.
The lease provisions must be interpreted under Texas law.[5] Texas law is consistent with most state law in requiring a court to initially look to the language of the lease. “We cannot ignore the clear language of an unambiguous contract. If the lease provision ... can be given a certain or definite meaning or interpretation, it is not ambiguous, and we must simply apply the language in the lease.” Cammack the Cook, L.L.C. v. Eastburn, 296 S.W.3d 884, 891 (Tex.App.2009) (citations omitted). None of the lease terms authorize the landlord to enter the apartment or to bring third parties into the apartment for assistance in getting a tenant to pay back rent or to pay for repairs.
However, where the lease terms are ambiguous, the terms of the lease are to be construed in favor of the tenant. ABS Sherman Props., Ltd. v. Sarris, 626 S.W.2d 538, 540 (Tex.App.1981).[6] Here the lease terms are not ambiguous and do not authorize entry of either the landlord or third parties for the purposes at issue. However, to the degree the terms of the lease may be ambiguous, they must be resolved in favor of the tenant rather than the landlord.[7] In holding that the lease terms authorized the entry, the majority improperly resolves the ambiguity in favor of the landlord, at the expense of Irizarry’s Fourth Amendment rights.
C. United States v. Jacobs
The majority goes on to rely on Jacobs as authority for its holding that the lease authorized the landlord to invite the sergeants into the apartment. In Jacobs, we held that an Air Force sergeant who entered an airman’s apartment at the invitation of the landlord to remedy an emergency situation did not violate the Fourth Amendment. 31 M.J. at 144. We agreed with the “implied finding” of the CCA that an emergency situation existed and specifically held that “no Fourth Amendment violation occurs when a police officer enters a tenant’s apartment in such circumstances at the behest of the landlord and discovers evidence of crime in plain view.” Id. We noted that “[b]oth the lease agreement and applicable California law” explicitly allowed the landlord to enter to make emergency repairs and held that law enforcement may enter “ ‘in the shoes’ of the landlord to assist him in making emergency repairs.” Id. at 143-44 (footnotes omitted) (citing United States v. Sledge, 650 F.2d 1075, 1080 n. 10 (9th Cir.1981)).
Here, neither Texas law nor the lease provisions provide a basis for this entry of the landlord or the sergeants. But even if the sergeants had entered for a purpose allowed under the lease, I do not believe that the “in the shoes” doctrine adopted in Jacobs is good law. Jacobs relied on a footnote in Sledge, as authority for the “in the shoes” doctrine. Jacobs, 31 M.J. at 144. The relevant language in that footnote states that:
*112 [I]t is the ordinary rule that a relation between a third party and a defendant of landlord-lessee, without more, does not actually authorize the third-party landlord to consent to a search of the demised premises during the period of the defendant-tenant’s occupancy or tenancy. However, coexistent with this rule is the principle applied to cases in which some third party has actual authority for a limited access to the defendant’s premises, and that access is sufficient to include plain sight of the incriminating evidence within its scope. Such cases have sometimes held that the police have the authority to stand in the shoes of that third party.
Sledge, 650 F.2d at 1080 n. 10 (emphasis added) (citations omitted).
However, none of the four cases cited in the Sledge footnote for the “in the shoes” doctrine actually support that theory. United States v. Gradowski, 502 F.2d 563, 564 (2d Cir.1974), affirmed the search of a car in a one paragraph per curiam opinion on the basis that “[c]onsent to a search by one with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied, alone validates the search.” Both United States v. Hersh, 464 F.2d 228, 229-30 (9th Cir.1972), and Wilson v. Health & Hosp. Corp. of Marion County, 620 F.2d 1201, 1210 (7th Cir.1980), simply restate the plain view doctrine and reiterate it does not justify a warrantless entry in the first place. Finally, in Wilson, 472 F.2d at 902, the court concluded that a landlord had a right to allow law enforcement to enter leased property because the apartment and the property within it were abandoned and there is “nothing unlawful in the Government’s appropriation of such abandoned property.” Id. (quoting Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960)). None of the cited cases discussed or even mentioned an “in the shoes” doctrine.
I am not aware of any other circuit which has adopted the “in the shoes” theory of the authority of a landlord to consent to a government agent’s search of an individual’s apartment, and the doctrine is contradicted by a later case out of the United States Court of Appeals for the Ninth Circuit. See United States v. Warner, 843 F.2d 401, 403 (9th Cir.1988).[8] Furthermore, the doctrine is inconsistent with Supreme Court precedent discussed supra recognizing that landlords have no actual authority to consent to government intrusions into the privacy of their tenants, and that consent must be based on “common authority.” Randolph, 547 U.S. at 110-13, 126 S.Ct. 1515; Matlock, 415 U.S. at 169-71 & n. 7, 94 S.Ct. 988.
It is difficult to envision a situation where the sergeants — who the majority recognizes were there in their official capacity as representatives of the U.S. Air Force — can at the same time be representatives of the landlord to further its commercial interests.[9] I would therefore overrule Jacobs to the extent that it allows a landlord to consent to a government entry for any purpose which the landlord may also have a limited right of entry.
D. Reasonableness of Entry as Command Representative
The majority also holds that the sergeants’ entry into the apartment was reasonable due to the fact that they were effectuating their command responsibilities with no law enforcement purpose and no expectation that a crime had been committed or evidence would be found. Irizarry, 72 M.J. at 106-07. Un *113 der these circumstances the majority concludes it would be unreasonable to expect the sergeants to obtain a warrant — thus the war-rantless entry was reasonable. I cannot agree that the degree of difficulty in obtaining a warrant can somehow justify a subsequent warrantless entry. The issue that we are called upon to decide is whether the sergeants’ warrantless entry into the apartment was reasonable. The fact that there was no warrant frames the issue but does not justify the entry.
It is not clear whether this discussion of the reasonableness of the entry under a “command representative” theory is an independent basis supporting the reasonableness of the entry or is included for its cumulative effect with the “in the shoes” theory. Under either theory the holding is an unwarranted extension of this court’s Fourth Amendment jurisprudence.
I am uncomfortable with what appears to be a unique military exception to the Fourth Amendment, which gives military personnel essentially carte blanche authority to enter a subordinate’s off-base residence: (1) at the invitation of the landlord; (2) when the purpose of the entry effectuates a command responsibility; and (3) the entry has no explicit law enforcement purpose at the outset. Irizarry, 72 M.J. at 106-07. Such a sweeping exception invites substantial abuse of the privacy interests of military members and their families, many of whom may live off base for the very purpose of obtaining a greater sense of privacy.
In conclusion, there is no legal basis for the majority’s holding that the sergeants’ entry and search of Irizarry’s off-base apartment was reasonable for Fourth Amendment purposes. For that reason, I dissent from that portion of the majority’s opinion.
3. Exclusionary Rule
While I dissent from the majority’s Fourth Amendment analysis and conclusion, I concur in the ultimate result in the case because “[t]he [Fourth] Amendment says nothing about suppressing evidence obtained in violation of [its] command. That rule — the exclusionary rule — is a ‘prudential’ doctrine,” Davis v. United States, — U.S. --, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011) (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), “created by [the Supreme] Court to ‘compel respect for the constitutional guaranty.’” Id. (quoting Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960))). The Supreme Court has “repeatedly held” that the rule’s sole purpose is to “deter future Fourth Amendment violations.” Id. (citing Herring v. United States, 555 U.S. 135, 141 & n. 2, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); United States v. Leon, 468 U.S. 897, 909, 921 n. 22, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Elkins, 364 U.S. at 217, 80 S.Ct. 1437). “Real deterrent value is a ‘necessary condition for exclusion’ .... ” Id. at 2427 (quoting Hudson v. Michigan, 547 U.S. 586, 596, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)).
This court has also noted that “[Unwarranted application of the [exclusionary] rule can result in a disparity between the error committed by the police and the windfall afforded the accused.” United States v. Khamsouk, 57 M.J. 282, 292 (C.A.A.F.2002). “The fundamental purpose of the exclusionary rule is to deter improper law enforcement conduct.” United States v. Conklin, 63 M.J. 333, 340 (C.A.A.F.2006). “[D]espite its broad purpose, ‘the rule does not proscribe the introduction of illegally seized evidence in all proceedings or against all persons, ... but applies only in contexts where its remedial objectives are thought most efficaciously served.’ ” Khamsouk, 57 M.J. at 292 (quoting Pennsylvania Bd. of Probation and Parole, 524 U.S. at 363, 118 S.Ct. 2014). In this case I see no deterrent benefit resulting from the imposition of the exclusionary rule, and I would therefore decline to apply it.
The critical factor in reaching this conclusion is that the sergeants did not enter for the purpose of conducting a criminal investigation or for the purpose of searching for evidence that might later be utilized against Irizarry at a court-martial, disciplinary hearing, or other legal proceeding. Therefore, suppressing the evidence they unexpectedly discovered would not thwart their initial pur *114 pose for entering the apartment, so as to discourage entry under similar circumstances in the future. Their uncontroverted purpose was to assess the scope of the damage to the apartment, possibly protect Irizarry from legal action by the landlord, protect the Air Force’s relationship with the local civilian community, and to report back to command on the situation. None of these purposes constitute police misconduct that the exclusionary rule was designed to or is capable of deterring.
Irizarry argues, however, that Military Rule of Evidence (M.R.E.) 311 mandates exclusion of evidence regardless of whether exclusion has any deterrent effect. A premise of this argument is that the President has adopted a more restrictive exclusionary rule for courts-martial than the judicially created exclusionary rule adopted for the Fourth Amendment. While I agree with Irizarry that the President could adopt such a rule if he chose, I am not convinced that he has done so.
M.R.E. 311-M.R.E. 317 are intended to “express the manner in which the Fourth Amendment to the Constitution of the United States applies to trials by court-martial.” Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-17 (2012 ed.) [hereinafter Drafters’ Analysis]. I read this language to reflect the President’s intent that M.R.E. 311-M.R.E. 317 be interpreted in light of federal Fourth Amendment case law, including the exclusionary rule. This inference is strengthened by the frequent amendments to the rule which mirror developments in Fourth Amendment jurisprudence in the federal courts. See generally Drafters’ Analysis at A22-17 to A22-31 (identifying changes in M.R.E. 311-M.R.E. 317 to conform to federal Fourth Amendment jurisprudence). In addition, this court has previously remarked on the deterrent purpose of the exclusionary rule in military cases. See Conklin, 63 M.J. at 340; Khamsouk, 57 M.J. at 292; see also United States v. Leedy, 65 M.J. 208, 219-20 (C.A.A.F.2007) (Erdmann, J., concurring). In the absence of a clear statement from the President, I decline to read M.R.E. 311 as more restrictive than the federal courts’ Fourth Amendment jurisprudence.

Conclusion

The search of Irizarry’s off-base apartment by his military supervisors violated the Fourth Amendment, but application of the exclusionary rule under these circumstances would not promote further compliance with the Fourth Amendment. I therefore join in the result reached by the majority.

. When Wilson’s rent had not been paid his landlord asked the neighbors as to his whereabouts and was informed that Wilson had moved out and it was uncertain whether he would return. Wilson, 472 F.2d at 901. When the landlord went to the apartment he found the door open and the apartment in disarray. Id. "Lying about were some old clothing, a television set, pipe bombs, blasting powder, and impact fuses.” Id. The landlord nailed the door shut and called the police. Id. The FBI seized the explosives and after the agents obtained a search warrant, they returned and searched the apartment. Id.

. The majority also relies on Skinner v. Railway Labor Executives’ Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), in support of Irizarry’s alleged diminished expectation of privacy. Skinner, however, has nothing to do with the expectation of privacy in the home, but rather centers on the diminished expectation of railroad workers in the context of routine urinalysis "by reason of their participation in an industry that is regulated pervasively to ensure safely.’’ Id. at 627, 109 S.Ct. 1402.

. The majority distinguishes these cases on the basis that the entry in this case was not for a law enforcement purpose. That distinction is unpersuasive for two reasons. First, the protections of the Fourth Amendment are not limited to intrusions of a law enforcement nature. See O’Connor, 480 U.S. at 714-15, 107 S.Ct. 1492; T.L.O., 469 U.S. at 335, 105 S.Ct. 733. Second, a search is not less intrusive upon a citizen's protected privacy right simply because it did not occur with a law enforcement purpose in mind.

. Amicus argued that the landlord was authorized to enter the apartment under paragraph 13 of the lease because the rent was delinquent. Brief of Amicus Curiae at 8, United States v. Irizarry, No. 12-0451 (C.A.A.F. Oct. 29, 2012). However, paragraph 13 provides:
CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.
Removal After We Exercise Lien for Rent. If your rent is delinquent, our representative may peacefully enter the apartment and remove and/or store all property subject to lien. Written notice of entry must be left afterwards in the apartment in a conspicuous place — plus a list of items removed.
Emphasis added. Cedar Creek had not exercised a lien for delinquent rent at the time of entry nor did it enter the apartment to remove Irizarry’s property.

. I agree with the majority that an analysis of Texas case law is irrelevant to the Fourth Amendment inquiry. Irizarry, 72 M.J. at 104 n. 6. I rely on Supreme Court precedent for my Fourth Amendment analysis and focus on the terms of the lease and Texas case law only to the degree they are relevant to interpretation of the lease provisions and to the majority’s Jacobs's analysis.

. See also Buffalo Pipeline Co. v. Bell, 694 S.W.2d 592, 598 (Tex.App.1985) ("In Texas, it is established that a lease will be most strongly construed against the lessor ....").

.The majority cites several Texas cases for the principle that "an accused can knowingly and voluntarily contract to allow third parties to enter a space where the accused has a reasonable expectation of privacy.” Irizarry, 72 M.J. at 104. I agree with that principle and note that Irizarry contracted to allow the landlord entry into his apartment for the specific purposes listed in paragraphs 13 and 28 of the lease — none of which authorized the entry of either the landlord or the sergeants in this case.

. In Warner the landlord had limited access to the leased premises. Warner, 843 F.2d at 403. While mowing the lawn he noticed a pungent chemical smell and called the police and asked that someone from an appropriate agency come to check out the situation, but that it was not an emergency. Id. at 402. A police officer arrived and the landlord unlocked the garage, where they discovered chemicals that are used in the manufacture of drugs. Id. The drugs were seized, but the Ninth Circuit held that the landlord could not consent to the search and upheld the district court's order suppressing the evidence. Id. at 403, 405.

. This is particularly true in this case, where the first sergeant had already explained to Cedar Creek, prior to entering the apartment, that there was nothing that the Air Force could do and that it would have to pursue the issue through civilian channels.