86 F.3d 1164
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmy Dale BELL, Defendant-Appellant.
 No. 95-10214.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1996.
Decided May 20, 1996.
 
 1
 Before: BEEZER and HAWKINS, Circuit Judges, and QUACKENBUSH, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Jimmy Dale Bell appeals his jury conviction on two counts (I & III) of possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); use of a firearm in connection with a drug trafficking crime (Count V), in violation of 18 U.S.C. § 924(c)(1); and escape from federal custody (Count VI), in violation of 18 U.S.C. § 751(a).
 
 
 4
 Bell contends the district court erred by failing to sever, sua sponte, the escape charge from the underlying charges. He also asserts that the district court erred in excluding a tape-recorded conversation between Valerie Fox and Jacqueline Fox. Finally, Bell argues that the district court erred in finding that he lacked standing to challenge the police officers' search of the residence and luggage therein on Fourth Amendment grounds.
 
 
 5
 We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and remand in part.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 6
 On February 21, 1993, Las Vegas Metropolitan Police Officers Robert Hindi ("Hindi") and Jeffrey Whitehead ("Whitehead") were dispatched to an interrupted emergency 911 call originating from Space 41 of the Candlewood Mobile Home Park, 3295 North Nellis Boulevard (the "residence" or the "trailer"). Interrupted 911 calls receive high priority, due to the possibility of ongoing domestic violence, and officers are immediately dispatched to such calls.
 
 
 7
 Arriving at the residence, Officers Hindi and Whitehead knocked at the door and were greeted by Valerie Fox ("Valerie"). Valerie appeared nervous to the officers. In response to that nervousness, the officers asked if they could come in and check the residence. Valerie Fox consented to the officers' entry into her residence.
 
 
 8
 Upon entering the residence, the officers noticed a phone that appeared to have been pulled from the wall, with the wiring detached from it. Officer Whitehead then asked Valerie if there was anyone else present in the residence, to which she responded negatively. The officers then noticed vibrations in the floor of the trailer, signaling to them that other individuals were in the residence.
 
 
 9
 Officer Whitehead found Jimmy Bell and Jacqueline Fox ("Jacqueline") in the back bedroom. Bell was fully dressed and awake. Jacqueline was nude under a blanket in the bed. Jacqueline rose from the bed, covered by a blanket, and began to shuffle or kick her feet amongst the clothes that were strewn across the bedroom floor as if she was trying to hide something. The officers directed Jacqueline to sit back down on the bed. Jacqueline rose again, and shuffled her feet in the same manner, this time kicking the clothes towards a black bag near her on the floor. Hindi then observed marijuana joints on the floor. Near the joints, Hindi also found a wood frame mirror with white powdery residue which the officers believed to be a controlled substance.
 
 
 10
 Jacqueline Fox then stood up and walked towards a purse on the floor. Officer Hindi sat her back down. He then examined the floor near the purse, where he found another joint. Retrieving the joint, Hindi saw a clear plastic bag containing marijuana protruding from Jacqueline's partially opened purse. Jacqueline admitted the purse was hers.
 
 
 11
 The officers then asked Bell and Jacqueline if there were any weapons in the room. Bell said yes, and moved towards a pair of his pants which were lying on the floor. Officer Hindi then handcuffed Bell, and the officers retrieved a loaded .22 caliber pistol from the pants on the floor.
 
 
 12
 Jacqueline again attempted to stand up, and again shuffled her feet, pushing clothing on top of a black bag. Officer Hindi physically sat Jacqueline down, walked over to the bag, removed the clothing covering it, and asked who the bag belonged to. Jacqueline claimed the bag, and consented to the officer's request to search it. Inside the bag, Officer Hindi found, inter alia, 36.0 grams of hallucinogenic mushrooms, 126.2 grams of marijuana, and a .9 mm Llama handgun with two loaded magazines.
 
 
 13
 While Officer Hindi replaced these items into the black bag, Jacqueline once again stood up and walked towards a suitcase. Officer Whitehead restrained Jacqueline, and then searched the partially opened suitcase. Inside the suitcase, the officer found an open bank bag containing 14 individual baggies containing a substance later determined to be methamphetamine and an electronic weight scale. Bell and Jacqueline Fox were taken to the Clark County Detention Center for booking, where corrections officers found another marijuana cigarette in Bell's shirt pocket.
 
 
 14
 On August 3, 1994, a federal grand jury in Las Vegas returned a five-count indictment charging Bell with possession of controlled substances with the intent to distribute, 21 U.S.C. § 841(a)(1), (methamphetamine, psilocybin, and marijuana), and use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c).
 
 
 15
 After being initially detained in Texas, Bell was transferred to the North Las Vegas Detention Center. On October 19, 1994, while in pretrial detention, Bell and another inmate unsuccessfully attempted to escape by climbing a fence topped with razor wire.
 
 
 16
 On November 30, 1994, a Superseding Indictment was filed adding a count of attempted escape from federal custody in violation of 18 U.S.C. § 751(a). Counsel for the Defendant filed a motion to suppress, which was denied for lack of evidence of the Defendant's standing to claim Fourth Amendment rights in the mobile home. No pretrial motion to sever the escape charge was filed.
 
 
 17
 On January 19, 1995, a jury found Bell guilty of possession of marijuana and methamphetamine with the intent to distribute, use of the .22 caliber pistol in connection with a drug-related crime, and attempted escape from federal custody. The jury acquitted Bell of possession of psilocybin with the intent to distribute, and failed to reach a verdict on the firearm charge as to the .9 mm Llama. Bell timely appealed.
 
 DISCUSSION
 
 18
 A. Severance of the Escape Charge.
 
 
 19
 Bell argues that the district court committed plain error in failing to sua sponte sever the escape charge from the other charges, citing United States v. Peoples, 748 F.2d 934 (4th Cir.1984), cert. denied, 471 U.S. 1067 (1985). Bell urges us to consider the following dispositive factors in reviewing whether "wholly unrelated counts" should be joined: (1) the temporal relationship between the offenses; (2) whether the motive for flight was avoidance of prosecution for the underlying offense; and (3) whether custody was derived directly from the substantive offense. The crux of Bell's argument is that the lapse of time between the original offense (February 21, 1993), and his attempted escape (October 19, 1994), required the court to sever the escape charge from the other charges.
 
 
 20
 In response, the Government asserts that evidence of Bell's attempted escape was admissible to show consciousness of guilt, that the joinder of the charges was not prejudicial, and that the attempted escape was not remote in time from Bell's placement in federal custody.
 
 
 21
 Bell's trial counsel failed to move for a severance of these counts, nor did he raise the issue in any fashion at the trial court. Therefore, we review the issue for plain error. Fed.R.Crim.P. 52(b); see United States v. Olano, 507 U.S. 725 (1993).
 
 
 22
 Fed.R.Crim.P. 52(b) provides us with limited power to notice errors affecting substantial rights, despite the failure of trial counsel to bring them to the attention of the district court. The Supreme Court has stated that the error must be a deviation from a legal rule that is clear or obvious, and the deviation must have affected the outcome of the district court proceedings. Olano, 507 U.S. at ----, 113 S.Ct. at 1777-78. The Defendant bears the burden of persuasion with respect to prejudice. Id.
 
 
 23
 Bell has failed to demonstrate a clear deviation from a legal rule. Joinder of charges is permitted by Fed.R.Crim.P. 8. Moreover, Bell's only evidence of prejudice is a single, conclusory statement that "overall unfair prejudice" resulted from the joinder of the charges. Here, as in United States v. Elliott, 418 F.2d 219, 221 (9th Cir.1969), the Defendant took the stand and admitted the attempted escape. Bell simply has not proven the existence of any prejudice arising from the joinder of the charges. Therefore, even though a valid basis existed for the granting of a severance motion, or for the court to so rule, sua sponte, we do not find plain error in the district court's failure to sever the escape charge from the underlying charges.
 
 
 24
 B. The Tape Recorded Conversation Between Valerie and Jacqueline Fox.
 
 
 25
 On February 9, 1994, as part of her cooperation with the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"), Valerie Fox placed a phone call to her sister Jacqueline. This 23-minute phone call was recorded, and a transcript was prepared at the request of the ATF. During their conversation, Jacqueline repeatedly stated that the drugs involved belonged to her, and that Bell had no knowledge of them. Jacqueline also indicated, both on the tape and in her trial testimony, that she believed the conversation was being taped.
 
 
 26
 After Bell's counsel indicated his intent to introduce the tape recording at trial, the Government moved in limine to exclude the introduction of the tape recording as an exhibit. The district court found that the tape constituted inadmissible hearsay, but that counsel for the Defendant could impeach Jacqueline through the use of the prior inconsistent statements reflected in the transcript of the tape recorded conversation. The court ruled that the transcript would be used in lieu of the actual tape, due to the difficulty of pinpointing the exact inconsistent statement in the audio version of the tape.
 
 
 27
 Bell contends that the tape qualifies as admissible hearsay pursuant to the hearsay exception of Rule 803(24) of the Federal Rules of Evidence (the "catch-all exception"). Bell asserts that the catch-all exception applies, as the taped conversation most closely resembles Rule 803(3)'s exception for statements of then-existing state of mind. We review de novo a district court's interpretation of the Federal Rules of Evidence. United States v. Hove, 52 F.3d 233, 236 (9th Cir.1995).
 
 
 28
 Rule 803(24) provides that a statement not covered by other exceptions to the hearsay rule may be admissible if it has circumstantial guarantees of trustworthiness and the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can provide; and (C) admission of the statement serves the general purposes of the rules and the interests of justice. "[The trial judge has a fair degree of latitude in deciding whether to admit statements under Fed.R.Evid. 803(24)." United States v. Valdez-Soto, 31 F.3d 1467, 1471 (9th Cir.1994), cert. denied, 115 S.Ct. 1969 (1995).
 
 
 29
 A central concern in the admission of hearsay evidence is the lack of reliability. This lack of reliability may be overcome by the statement's resemblance to another of the hearsay exceptions. Bell points the court to Rule 803(3), asserting that this statement is reliable as it most closely resembles the exception for a declarant's statement of then existing state of mind.
 
 
 30
 Under Rule 803(3), the court must weigh three factors in determining admissibility: (1) contemporaneousness, (2) chance to reflect, and (3) relevance. United States v. Faust, 850 F.2d 575, 585 (9th Cir.1988). Here, the statements made by Jacqueline regarding ownership of the drugs are relevant to the case; however, the taped conversation patently fails under the other two factors. The passage of a year between her arrest and the phone conversation and Jacqueline's opportunity for reflection render this statement unreliable. The conversation does not closely resemble statements admissible under Rule 803(3)'s exception to the hearsay exclusion. The district court properly limited counsel's use of a transcript of the tape recording to impeach Jacqueline's inconsistent trial testimony.
 
 
 31
 The district court did not abuse its discretion in finding that the tape recording of the conversation, itself, was inadmissible hearsay and not within the catch-all exception of Rule 803(24). The allowed use of the transcript of the tape recording for impeachment purposes was appropriate and put Jacqueline's statements exculpating Bell before the jury as prior inconsistent statements, but not as substantive evidence, due to their hearsay nature.
 
 
 32
 C. Officers Hindi and Whitehead's Search of the Fox Residence.
 
 
 33
 Finally, Bell challenges the officers' search of the Fox trailer home on Fourth Amendment grounds. Bell filed a pretrial motion to suppress the evidence obtained from the officers' search of the trailer based on an alleged lack of exigent circumstances. The district court adopted the recommendation of the magistrate judge, finding that Bell lacked standing to challenge the search of the trailer, and that the search of Bell's pants resulting in the location of the .22 caliber firearm was warranted both by Bell's consent and exigent circumstances.
 
 
 34
 Bell claims there were no exigent circumstances justifying the warrantless search of the Fox residence, and there was no "urgent need for immediate action." United States v. Flickinger, 573 F.2d 1349, 1355 (9th Cir.), cert. denied, 439 U.S. 836 (1978), overruled on other grounds by United States v. McConney, 728 F.2d 1195 (9th Cir.1984) (en banc). However, Bell fails to address the primary basis for the denial of the suppression motion, to-wit: lack of standing in the premises to support a Fourth Amendment claim.
 
 
 35
 In order to challenge the search of the trailer on Fourth Amendment grounds, Bell must have established standing to do so. Standing requires that the individual asserting the rights must have a legitimate expectation of privacy in those areas searched. United States v. Armenta, 69 F.3d 304, 308 (9th Cir.1995) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978)). Where the facts are not in dispute, a determination regarding standing is reviewed de novo. United States v. Echegoyen, 799 F.2d 1271, 1277 (9th Cir.1986). A district court's findings of fact at a suppression hearing are upheld unless clearly erroneous. Id.
 
 
 36
 Bell argues that he had standing to challenge the search based on his status as an overnight guest. Bell's sole evidence offered to prove that he was an overnight guest in the trailer was a statement by counsel at oral argument on the suppression motion that Bell was, in fact, a guest. Cf. Armenta, 69 F.3d at 308 (rejecting an assertion of standing despite the fact that the Defendant offered testimony that he had spent the night; that his wallet, baptismal certificate, and social security card application were found at the house; and an affidavit from counsel stating that a third-party would testify that the defendant was a guest and "had run of the house").
 
 
 37
 Here, the district court found that "Bell has failed to present any evidence which established that he had a legitimate privacy interest in the mobile home." Provided with the opportunity to dispute this lack of evidence, Bell has failed. The district court did not err in finding that Bell lacked standing to challenge the search of the residence.
 
 
 38
 D. Bell's conviction for use of a firearm in relation to a drug trafficking crime.
 
 
 39
 Pursuant to the parties' Stipulation for Limited Remand to the District Court, Bell's conviction for use of a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1) is remanded to the district court for dismissal and resentencing in light of Bailey v. United States, --- U.S. ----, 116 S.Ct. 501 (1995).
 
 E. Ineffective Assistance of Counsel
 
 40
 At the argument of this matter, the Defendant's retained counsel, who served both at trial and on appeal, admitted to errors in his representation of the Defendant. First, counsel admitted he erred in failing to move for a severance of the escape charge from the drug and firearm charges. Secondly, counsel acknowledged that he failed to introduce testimony at the suppression hearing to support the Defendant's standing to claim Fourth Amendment rights in the mobile home. We note that at trial, the Defendant testified to facts that may have established Fourth Amendment standing had that testimony been offered at the suppression hearing. The lack of such testimony at the suppression hearing was fatal.
 
 
 41
 The issue of counsel's effectiveness, or lack thereof, is not before us on this direct appeal of the convictions.
 
 CONCLUSION
 
 42
 Bell's convictions for possession with the intent to distribute controlled substances (Counts I & III), 21 U.S.C. § 841(a), and escape from federal custody (Count VI), 18 U.S.C. § 751(a), are affirmed. His conviction for use of a firearm in connection with a drug trafficking crime, 18 U.S.C. § 924(c)(1) (Count V), is remanded.
 
 
 43
 AFFIRMED, in part and REMANDED, in part.
 
 
 
 *
 The Honorable Justin L. Quackenbush, Senior United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 Pursuant to Circuit Rule 36-3, this disposition is not appropriate for publication and may not be cited to or by this Court or any other court of this circuit, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel